**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LOLA M. ALVERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 06-0866-WS-M** |
| | ) | |
| **AUTO-OWNERS INSURANCE** | ) | |
| **COMPANY, etc.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

This matter is before the Court on the plaintiff's motion to remand.  (Doc. 7).  The parties have filed briefs in support of their respective positions, (Docs. 8, 13),[1] and the motion is ripe for resolution.  After carefully considering the foregoing and other relevant materials in the file, the Court concludes that the motion to remand is due to be granted.

## BACKGROUND

The plaintiff's home was insured under a policy issued by defendant Auto-Owners Insurance Company ("Auto-Owners").  The policy was purchased through non-party White Agencies, d/b/a Atmore Insurance Services ("White") and its agent, defendant John James.  In lieu of White, the plaintiff sued Atmore Insurance Company, Inc. ("Atmore").  Following Hurricane Ivan, defendant SEA, Ltd. participated in the adjustment of the plaintiff's claim.  Defendants James and Atmore, like the plaintiff, are Alabama citizens.

The complaint alleges that, in selling the plaintiff the subject policy, James and Atmore misrepresented the policy's coverage.  It alleges that, following the loss, the defendants breached the contract, committed bad faith, misrepresented and suppressed

_____

[1]The plaintiff declined the opportunity to present a reply brief.  (Doc. 10).

material facts, and were negligent.

There is no question that the amount in controversy exceeds $75,000 and no question that Auto-Owners and SEA are not citizens of Alabama. The only question is whether Atmore and James were fraudulently joined such that their citizenship can be ignored in assessing the existence of the "complete diversity" required by 28 U.S.C. § 1332.[2]

## DISCUSSION

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983). Conversely, if no such possibility exists, the joinder is fraudulent as a matter of law. *Id.* at 1440. There must be "no *reasonable* possibility" of legal liability; a mere *theoretical* possibility will not prevent a conclusion of fraudulent joinder. *Legg v. Wyeth*, 428 F.3d 1317, 1325 & n.5 (11th Cir. 2005) (emphasis added). The burden is on the defendants to make the required showing by clear and convincing evidence. *Henderson v. Washington National Insurance Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). In addition to the complaint, the Court may consider evidence submitted by the parties in determining whether the resident defendant was fraudulently joined. *Legg v. Wyeth*, 428 F.3d at 1322. "In such a

---

[2]"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). The Court therefore confines its consideration to those arguments the parties have elected to assert expressly.

proceeding, the district court must resolve all questions of fact ... in favor of the plaintiff." *Id*. at 1323 (internal quotes omitted).

Remand is required if there is even one claim asserted against either resident defendant as to which there is a reasonable possibility of liability. Because the Court has identified such a claim, it pretermits discussion of all others.

The complaint alleges that, following the loss, the plaintiff gave notice of loss to James. (Complaint, ¶ 16). It further alleges that, after a contractor advised her that the home had been so damaged that repair would require demolition to the studs, she attempted to contact James on numerous occasions, but he failed to contact her. (*Id*., ¶¶ 19, 21). Later, two individuals not associated with the defendants inspected the home and determined that the foundation was damaged and the frame shifted. (*Id*., ¶¶ 22, 24). The plaintiff notified James of these findings. (*Id*., ¶¶ 23, 25). Several months later, a SEA representative inspected the plaintiff's home but did not inspect for foundational or framing problems. (*Id*., ¶ 27). The plaintiff informed James of this deficiency in the SEA representative's inspection. (*Id*., ¶ 28). She repeatedly asked James for a copy of the SEA report, which he provided after a delay of several months. (*Id*., ¶¶ 29-30). The plaintiff was unable to begin repairs pending adjustment of her claim, and during the "unreasonable and unnecessary delay" in this process, mold began to grow in her home. (*Id*., ¶ 31). The plaintiff informed James of the mold. (*Id*.).

The complaint alleges that James negligently breached duties he owed the plaintiff. (Complaint, ¶¶ 67-71). In support of her motion to remand, the plaintiff identifies James' negligence as inhering in his "fail[ure] to assist her in the claims process[,] which resulted in an unreasonable delay of Plaintiff's claim." (Doc. 8 at 5).

The defendants identify four reasons that James cannot be liable under this claim: (1) there is no claim under Alabama law for negligent handling of an insurance claim; (2) there is evidence that James did not investigate or adjust the claim; (3) the statute of limitations has expired; and (4) the plaintiff was contributorily negligent. (Doc. 13 at 14-

15).  The defendants have failed to demonstrate that any of these arguments forecloses a reasonable possibility that an Alabama court would find James liable under this claim.

It is certainly true that Alabama does not recognize a claim against an insurance company for negligent handling of an insurance claim, instead limiting the insurer's exposure to a claim for bad faith.  *Kervin v. Southern Guaranty Insurance Co.*, 667 So. 2d 704, 706 (Ala. 1995).  The plaintiff's claim, however, is not against an insurer for negligent handling of a claim under a policy it issued, but against an independent insurance agent for not assisting an insured in navigating the claims process.  The defendants, who rely solely on *Kervin*, have not addressed this claim or attempted to show that Alabama law precludes such a cause of action, either in general or on the facts alleged.

There is indeed uncontroverted evidence that James did not investigate or adjust the claim, (Doc. 1, Worley Affidavit), but the plaintiff's negligence claim does not rest on a duty to investigate or adjust the claim but on a duty to assist the insured during the insurer's investigation and adjustment of the claim.  There has been no evidence or argument presented that James satisfied whatever duty he may have had in this regard.

Hurricane Ivan struck on or about September 16, 2004.  The complaint was filed on September 21, 2006.  (Doc. 1, Exhibit 2 at 3).  Because the plaintiff's negligence claim is based on conduct that occurred weeks and months after the insured loss, the defendants have not shown that the claim is barred by Alabama's two-year statute of limitations.

The sole authority cited in support of the defendants' contributory negligence argument holds only that an insured's failure to review his policy and discover that it provides less coverage than what he requested his agent or broker to procure constitutes contributory negligence fatal to a claim of negligent failure to procure insurance.  *Kanellis v. Pacific Indemnity Co.*, 917 So. 2d 149, 154 (Ala. Civ. App. 2005).  That case does not establish that the plaintiff here, raising an entirely different claim, was contributorily negligent as a matter of law.  Indeed, the defendants fail even to identify

-4-

the act or omission of the plaintiff that allegedly constitutes contributory negligence.

Although not articulated in their discussion of the plaintiff's negligence claim, the defendants argue that any delay in adjusting her claim could not be a proximate cause of her damages (the mold infestation), because the policy provided that, "[i]f a covered loss occurs, the insured must: ... protect the property from further damage or loss ...."  (Doc. 13 at 14; Doc. 1, Worley Affidavit, Exhibit A at 33, ¶ 1(b)).  The defendants have not attempted to show that the plaintiff took inadequate steps to prevent a mold infestation,[3] nor have they shown that this provision automatically precludes insurer liability for mold regardless of the adequacy of the preventative steps taken by the insured.  The defendants rely on *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293 (Ala. 1999), but that case — in which the insureds knew their house was cracking but took no steps to remedy it, *id*. at 298, 321-22 — does not establish that an Alabama court could not find the mold infestation to be a proximate result of the delay allegedly caused in part by James' failure to assist the plaintiff with the claims process.

## CONCLUSION

For the reasons set forth above, the motion to remand is **granted**.  This action is **remanded** to the Circuit Court of Escambia County.

DONE and ORDERED this 6th day of February, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[3]The complaint alleges that the plaintiff could not begin repairs pending the determination of her claim, but it does not state that she failed, for example, to dry out the house or cover holes to prevent additional water intrusion.

-5-